**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TAHERA B.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 2:26-cv-01099 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Tahera B.'s ("Plaintiff") appeal of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). (ECF No. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed and considered the submissions filed in connection with the appeal and having declined to hold oral argument in accordance with Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **VACATED**, and the matter is **REMANDED** for further consideration consistent with this Opinion.

## I. BACKGROUND

### A. Procedural History

This matter arises out of the Commissioner's final decision denying Plaintiff's application for DIB, dated December 10, 2025. (ECF No. 1 ¶ 3). In May 2022, Plaintiff applied for DIB alleging disability beginning March 1, 2022, based on the following allegations of impairment:

long COVID, hypoxia syndrome, and home oxygen use. (Transcript of Proceedings ("Tr.") (ECF No. 9) at 17.[1])

At Plaintiff's request, Administrative Law Judge Richard West (the "ALJ") held a hearing on March 27, 2024. (*Id.* at 17.) In a decision dated January 7, 2025, the ALJ found Plaintiff was not disabled within the meaning of the Act. (*Id.* at 17–31.) The ALJ's decision became final when the Appeals Council declined review on December 10, 2025. (*Id.* at 1–6.) Having exhausted her administrative remedies on February 4, 2026, Plaintiff filed her appeal with this Court pursuant to 42 U.S.C. § 405(g), seeking review of the ALJ's decision. (ECF No. 1).

**B. Administrative History**

After finding Plaintiff met the Act's insured status requirements through December 31, 2027, the ALJ employed the five-step process established by the SSA to evaluate whether Plaintiff was eligible for social security and disability benefits. (Tr. at 17–31.)

The ALJ began by determining Plaintiff had not engaged in substantial gainful activity since March 1, 2022, and had the following severe medically determinable impairments: post-COVID hypoxia, obesity, obstructive sleep apnea, mild cognitive impairment, somatoform disorder, anxiety, and depression. (*Id.* at 20 (citing 20 C.F.R. § 404.1520(c)).) However, the ALJ concluded Plaintiff "d[id] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."[2] (Tr. at 20.)

[1] The Court uses the pagination of the Transcript of Proceedings rather than the ECF pagination in its citations to the Transcript of Proceedings.

[2] First, the ALJ determined Plaintiff did not meet the requirements of listing 3.02 (chronic respiratory disorders) because "she d[id] not have [forced expiratory volume] values equal to or less than 1.25; nor chronic impairment of gas exchange; nor significantly abnormal arterial blood gas values," "with the oxygen her breathing is not as bad," and "the most current pulmonary

The ALJ concluded Plaintiff "ha[d] the residual functional capacity [("RFC")] to perform sedentary work as defined in 20 CFR 404.1567(a)" with the following limitations:

> [S]he cannot climb ladders, ropes, or scaffolds, and can perform other postural functions occasionally; she must avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity; she must avoid close proximity to dust, fumes or similar respiratory irritants; she must avoid dangerous machinery and unprotected heights; she can understand, remember and carry out simple instructions; she can have occasional interaction with coworkers, supervisors and the general public; and she can deal with changes to essential job functions on an occasional basis.

(*Id.* at 22.) The ALJ considered Plaintiff's diagnostic testing, treatment history,[3] and the medical opinions and prior administrative medical findings contained in the record. [4] (*Id.* at 24–29.) The

---

function test confirm[s] moderate respiratory restriction but not at the listing level." (*Id.*) Second, the ALJ noted "there is no specific medical listing regarding obesity" but he "evaluated the impairment herein pursuant to the extensive and detailed guidelines set for in SSR 19-2p." (*Id.*) Third, the ALJ determined Plaintiff's mental impairments "considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04 and 12.06" nor the "paragraph B" and "paragraph C" criteria. (*Id.* at 20–22.) Instead, the ALJ determined Plaintiff's impairments caused one mild and three moderate limitations: (1) a mild limitation in understanding, remembering, or applying information, and moderate limitations in (2) interacting with others, (3) "concentrating, persisting or maintaining pace," and (4) adapting or managing oneself. (*Id.* at 21–22.)

[3] First, with respect to Plaintiff's post-COVID with exertional hypoxia, the ALJ noted "the records fail to document that [Plaintiff] has experienced significant hypoxia" and Plaintiff's "symptoms have been responsive to treatment and medication." (*Id.* at 26.) Next, as to Plaintiff's obesity, the ALJ acknowledged Plaintiff's Body Mass Index "is only on the cusp of obesity" and "the evidence does not reveal that this impairment resulted in any work-related limitations." (*Id.*) Finally, for Plaintiff's mental distress, the ALJ acknowledged Plaintiff's "intermittent symptoms at times cause moderate concentration deficits and social limitations" and Plaintiff has "received psychotherapy and medication" but "she could adapt to a job requiring no more than understanding, remembering, and carrying out simple instructions." (*Id.*)

[4] The ALJ identified the persuasiveness of the medical opinions in the record. The ALJ found the state agency medical consultants' opinions "substantially consistent with the record" and "persuasive." (*Id.* at 28.) Additionally, the ALJ found Dr. Gardner's opinion "partially persuasive," because while some parts of his opinions were supported, others were not. (*Id.*) The ALJ also found Dr. Merlin's opinion "partially persuasive," because he only "examined [Plaintiff] on a one-time basis and failed to provide a vocational assessment." (*Id.* at 29.) However, the ALJ found Dr. Aldea's medical source statement "unpersuasive because it [was] inconsistent and at odds with the

ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she had alleged, but the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 23.) Accordingly, the ALJ found the objective evidence did not support additional or more restrictive functional limitations in Plaintiff's RFC. (*Id.* at 29.) The ALJ then determined Plaintiff was unable to perform any past relevant work through the date last insured because her past relevant work as a patient care technician exceeded Plaintiff's RFC. (Tr. at 29.)

Taking into account Plaintiff's "age, education, work experience, and [RFC]," the ALJ concluded "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.* at 30.) At the hearing, the vocational expert testified Plaintiff would have been able to perform the requirements of representative occupations such as:

> **1.** Scale Operator (DOT[[5]]#737.687-126), which is sedentary exertion with a Specific Vocational Preparation ("SVP") of level two, with 40,000 jobs nationally;
> **2.** Table Worker (DOT#739.687-182), which is sedentary exertion with SVP of level two, with 50,000 jobs nationally;
> **3.** Final Assembler (DOT#713.687-018), which is sedentary exertion with SVP of level two, with 25,000 jobs nationally.

(*Id.*)

Ultimately, the ALJ concluded Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from March 1, 2022, through" January 7, 2025. (*Id.*)

---

examination in ways unexplained." (*Id.* at 28–29.) The ALJ also found Plaintiff's Function Reports "unpersuasive because they [were] not medical evidence of record." (*Id.* at 29.)

[5] DOT stands for Dictionary of Occupational Titles.

## II. STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A district court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019).

To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the claimant's specific impairment is not listed, the ALJ will consider the most similar listed impairment to decide whether the claimant's impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, then the ALJ must consider whether the combination of impairments equals any listed impairment. *Id.* § 404.1526(a)(3). An impairment or combination of impairments is equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental

> demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated in 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520(c) (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. *Id.* § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his or] her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. An ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for the error, they might have proven their disability. *Holloman*

*v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016); *see also J.F. v. Comm'r of Soc. Sec.*, Civ. A. No. 24-08440, 2026 WL 3252385, at *2 (D.N.J. Oct. 29, 2026) ("Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful.").

## IV. Decision

Plaintiff asks the Court to reverse the ALJ's decision and remand the action for further proceedings. (ECF No. 13 at 22.) Specifically, Plaintiff alleges there are three deficiencies in the ALJ's explanations for his decision which warrant remand. (*Id.* at 16–21.) The Commissioner requests the Court affirm the decision because it claims substantial evidence supports the ALJ's decision and the ALJ gave sufficient explanations for his decisions. (ECF No. 15).

Because the scope of a reviewing court's review is limited to determining whether the decision is supported by substantial evidence, the ALJ must "adequately explain his or her reasoning in a manner that allows for meaningful judicial review." *E.G. v. Comm'r of Soc. Sec.*, Civ. A. No. 23-12966, 2024 WL 3771820, at *2 (D.N.J. Aug. 13, 2024). This does not require the ALJ to "use particular language or adhere to a particular format in conducting [their] analysis so long as there is sufficient development of the record and explanation of findings to permit meaningful review." *Id.* (citation modified) (quoting *Jones*, 364 F.3d at 505).

The Court addresses each alleged deficiency with the ALJ's explanations in turn.

### A. The ALJ's Explanation of Plaintiff's RFC was Insufficient

Plaintiff contends the ALJ failed to explain whether supplemental oxygen should be included in the RFC. (ECF No. 13 at 4–5.) The Commissioner disagrees, arguing "the ALJ specifically explained and reasonably accounted for Plaintiff's respiratory symptoms by reducing

her exertional level to sedentary work and limiting her exposure to environmental irritants." (ECF No. 15 at 10.)

An RFC is the most a claimant can do despite their limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ is tasked with determining a claimant's RFC at the administrative hearing stage. *Id.* §§ 404.1546(c), 416.946(c). In making the RFC determination, the ALJ "has a duty to consider all of the evidence" but "need include only 'credibly established' limitations." *Salvatore C. v. Comm'r of Soc. Sec.*, Civ. A. No. 25-17651, 2026 WL 2617317, at *5 (D.N.J. Sept. 3, 2026) (citing *Plummer*, 186 F.3d at 429 (3d Cir. 1999) and *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)). An ALJ's RFC formulation has been found to provide an insufficient explanation where "it leaves a gap between the evidence of record and the ALJ's conclusions." *K.C.R. v. Comm'r of Soc. Sec.*, No. CV 22-06899, 2026 WL 2958023, at *2 (D.N.J. Oct. 1, 2026).

The Court finds there is a gap between the ALJ's findings Plaintiff "has shortness of breath post-COVID with exertional hypoxia" (Tr. at 26) and her "symptoms have been responsive to treatment" (*id.*), and the ALJ's decision to exclude oxygen use from the RFC. Plaintiff's oxygen use is a part of her treatment for her symptoms. Therefore, the ALJ's analysis leaves a gap between his acknowledgement that the record indicates supplemental oxygen is effectively treating Plaintiff's symptoms and his decision that supplemental oxygen should not be included in the RFC. While the Commissioner may be correct that the ALJ determined supplemental oxygen was not a credibly established limitation because there was no evidence to support Plaintiff's reliance on supplemental oxygen to the extent alleged (ECF No. 15 at 10), "it is not for this Court to speculate as to the ALJ's thought processes, and so the Court will not. The ALJ must make his reasoning

explicit." *Zigarelli v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. 18-12690, 2019 WL 3459080, at *4 n.3 (D.N.J. July 30, 2019).

**B. The ALJ's Persuasiveness Analyses of Dr. Comess and Dr. Gardner's Opinions Were Insufficient**

When an ALJ assesses the persuasiveness of medical opinions, they need only explicitly explain supportability and consistency. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). "Supportability concerns how well the objective medical evidence and explanations presented by the medical source support the opinion; consistency concerns how well the opinion accords with the evidence from other medical and nonmedical sources in the record." *VITO L., v. Comm'r Soc. Sec.*, No. Civ. A. No. 25-17997, 2026 WL 3083791, at *8 (D.N.J. Oct. 15, 2026) "To satisfy this requirement, a judge need not reiterate the magic works 'support' and 'consistent' for each doctor," but rather may "weave supportability and consistency throughout [their] analysis of which doctors were persuasive." *Zaborowski*, 115 F.4th at 639–40.

The Commissioner argues Plaintiff is attempting to hold the ALJ's evaluation of the doctors' opinions to a higher standard than is required and is making a veiled request for the Court to reweigh the evidence presented to the ALJ. (ECF No. 15 at 12–15.) The Court addresses each doctor in turn.

**1. The ALJ's Consistency Analysis of Dr. Comess's Opinion Was Insufficient**

Plaintiff contends the ALJ did not perform the required consistency analysis for Dr. Comess's opinion. (ECF No. 13 at 18–19.)

The ALJ performed a single persuasiveness analysis for the DDS consultants, including Dr. Comess, and found their opinions "substantially consistent with the record." (Tr. at 28.) The ALJ's explanation of their persuasiveness is limited to one paragraph, beginning with a summary of the doctors' opinions, followed by examples of information in the record the doctors cited to,

and ending with a determination the opinions are persuasive. (*Id.*) Dr. Comess's opinion consisted of determinations of Plaintiff's respiratory functions (Tr. 69–72), and the only explanation the ALJ gave for the DDS consultant's respiratory opinions being supported by or consistent with the record is that it "cited [Plaintiff's] history of COVID with residual shortness of breath and exertional hypoxia." (*Id.* at 28.)

This consistency analysis is insufficient to enable meaningful judicial review, particularly where the ALJ qualified the consistency as "substantial[]." (*Id.*) The Court is unable to discern from the ALJ's note that Dr. Comess cited one piece of record evidence in his opinion why the ALJ found Dr. Comess's opinion to be consistent with the record, nor what parts of the record the ALJ deemed Dr. Comess's opinion to be inconsistent with as suggested by the "substantial" qualifier. Plaintiff suggests Dr. Aldea's pulmonary findings are inconsistent with Dr. Comess's (ECF No. 13 at 15–16) and that very well could explain why the ALJ found Dr. Comess's findings not entirely consistent with the record, but, again, this Court will not speculate on the ALJ's thought process. *See Zigarelli*, 2019 WL 3459080, at *4 n.3.

**2. The ALJ's Persuasiveness Analysis of Dr. Gardner's Opinion Was Insufficient**

Plaintiff contends the ALJ did not explain how specific factors contributed to his evaluation of Dr. Gardner's opinion's persuasiveness. (ECF No. 13 at 19–21.)

The ALJ found Dr. Gardner's opinion "partially persuasive" because the doctor's examination did not provide findings consistent with some of the limitations identified by the doctor and his opinion was inconsistent with later formal neurocognitive testing. (Tr. at 28.) While the ALJ did not use the magic words "supportability" and "consistency," the Court has already explained he need not do so. The Court can discern from the ALJ's explanation he found Dr. Gardner's opinion only partially supported by his findings and not entirely consistent with the

record because the ALJ provided what evidence he determined was unsupported and what evidence he determined was inconsistent. (*Id.*) Specifically, in the ALJ's view, Dr. Gardner's finding that Plaintiff would have difficulty concentrating and persisting in tasks was not supported by Dr. Gardner's examination and the neurocognitive testing's findings of a full scale IQ of 77 and possible somatoform disorder were inconsistent with Dr. Gardner's opinion. (*Id.*)

Nonetheless, while an analysis of consistency and supportability is present, it "is too conclusory for this [C]ourt to find that the ALJ's decision is supported by substantial evidence." *Minarsky v. Kijakazi*, 747 F. Supp. 3d 801, 816 (M.D. Pa. 2024). The analysis is insufficient for meaningful judicial review because ALJ merely stated which evidence it thought was contradictory and which evidence it felt was not supported; he did not explain why such evidence was contradictory, why it was not supported, nor cite to the information he was referring to. *See id.* (finding an ALJ's consistency analysis failed to provide meaningful judicial review where the analysis was limited to stating the doctor's opinion was not supported by their treatment notes and failed to cite those notes). For example, the ALJ suggests somatoform disorder is inconsistent with Dr. Gardner's opinion but fails to identify which part of Dr. Gardner's opinion the disorder is inconsistent with and whether such inconsistency suggested Dr. Gardner's opinion was too restrictive or under restrictive. (Tr. at 28.)

Because the ALJ's determinations of Plaintiff's RFC and Dr. Comess's and Dr. Gardner's opinions' persuasiveness lack sufficient explanation, the Court is unable to determine whether those decisions were supported by substantial evidence. The Court must remand the matter so that the ALJ can provide explanations conducive to meaningful judicial review. *See K.C.R.*, 2026 WL 2958023, at *3 (remanding because the ALJ's explanation for its RFC determination were deficient); *Hammond v. O'Malley,* 735 F. Supp. 3d 567, 584 (E.D. Pa. 2024) (remanding, in part,

because the ALJ failed to properly articulate the persuasiveness of a medical opinion); *Zigarelli*, 2019 WL 3459080, at *4 (remanding because the court lacked the "requisite access" to the ALJ's reasoning to determine whether their decision was supported by substantial evidence).

## V. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **VACATED**, and the matter is **REMANDED** for further consideration consistent with this Opinion.

**Date: November 17th, 2026**

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**